TRACY L. WILKISON
Acting United States Attorney
BENJAMIN R. BARRON
Assistant United States Attorney
Chief, Santa Ana Branch Office
CHARLES E. PELL (Cal. SBN 210309)
Assistant United States Attorney
Santa Ana Branch Office
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701
     Telephone: (714) 338-3542
     Facsimile: (714) 338-3561
     E-mail:    charles.e.pell2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:20-cr-00597-SB |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT STEVEN R. GOLDSTEIN |
| v. | |
| STEVEN R. GOLDSTEIN, | Hearing Date: April 27, 2021<br>Hearing Time: 8:00 a.m. |
| Defendant. | |

Pursuant to Rule 32 of the Federal Rules of Criminal Procedure, plaintiff United States of America, by and through its counsel of record, the acting United States Attorney for the Central District of California and Assistant United States Attorney Charles E. Pell, hereby files its sentencing position for defendant Steven R. Goldstein.

This sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, and

such further evidence and argument as the Court may permit.

Dated: April 12, 2021

Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

BENJAMIN R. BARRON
Assistant United States Attorney
Chief, Santa Ana Branch Office


/s/ *Charles E. Pell*
CHARLES E. PELL
Assistant United States Attorney
Santa Ana Branch Office

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant Steven R. Goldstein pleaded guilty pre-indictment to one count of fraud involving major disaster/emergency benefits that involved an intended loss of more than $1 million, with actual loss of $655,000.  The government agrees with the Guidelines calculations of the Probation Office as set forth in the PSR, which found that defendant has a final offense level of 20 and criminal history category of I, resulting in a Guidelines sentencing range of 33 to 41 months of imprisonment.

Based upon the facts, the government believes that a low end Guideline sentence, after applying a two-level COVID variance and for the reasons in the concurrently-filed under seal filing by the government, is appropriate in this case: 21 months of imprisonment, followed by three years of supervised release.

**II.   BACKGROUND**

   **A.   Procedural Background**

On November 27, 2020, defendant was charged by criminal information with fraud in connection with major disaster and emergency benefits, in violation of 18 U.S.C. § 1040(a)(2).  (DE 20.)

On December 7, 2020, pursuant to a written plea agreement (DE 24), defendant pleaded guilty to the sole count of the information. (DE 34 (minutes of change of plea hearing).)

On February 16, 2021, the United States Probation Office disclosed defendant's Presentence Investigation Report (PSR). (DE 36.)  The Probation Office has determined that defendant's total offense level is 20 and his criminal history category is I.  (Id. at 3.)  With said offense level of 20, the PSR calculated the resulting

Guidelines sentencing range as 33 to 41 months' imprisonment, two to five years of supervised release, and a fine of $15,000 to $150,000. (Id.)  In its disclosed recommendation letter, the Probation Officer recommends a below Guidelines sentence of 24 months of imprisonment, to be followed by three years of supervised release, and restitution of $655,000.  (DE 35 at 1-2.)

**B.   Plea agreement**

Defendant pleaded guilty to the single count information against him. (PSR ¶ 1.)  That information charges defendant with violating Title 18, United States Code, Section 1040(a)(2). (Id. ¶ 2.)  The statutory maximum sentence that the Court can impose for a Section 1040(a)(2) conviction is 30 years of imprisonment, a five-year period of supervised release, a fine of $250,000 (or twice the gross gain or gross loss resulting from the offense), and a mandatory special assessment of $100.

In the plea agreement, the parties stipulated that the following guidelines calculations are correct:

    Base Offense Level:      7        U.S.S.G. § 2B1.1(a)(1)
    $550k < Loss < $1.5mm:  +14       U.S.S.G. § 2B1.1(b)(1)(H)
    Section 1040 conduct:   +2        U.S.S.G. § 2B1.1(b)(12)

(Id. ¶ 4; Plea Agreement ¶ 14.)

**C.   Factual Background**

Defendant agreed to the following facts as part of the plea agreement and change of plea hearing:

- On March 13, 2020, President Donald J. Trump declared an emergency under the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5191(b), which authorized assistance for COVID-19 response efforts for all U.S. states,

territories, and the District of Columbia.  The Coronavirus Aid, Relief, and Economic Security (CARES) Act is a federal law enacted in around March 2020 and was designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program (PPP).  Around April 2020, Congress authorized over $300 billion in additional PPP funding.

- In April and May 2020, defendant submitted applications for PPP loans to banks, which contained false statements about the number of employees and the amount of employee payroll expenses.  Those false statements were material because to qualify for PPP loans, those employee-related figures are used to calculate whether the business qualifies for a PPP loan, as well as to determine the amount of PPP funds the business is eligible to receive.

- Specifically, on or about May 2, 2020, defendant submitted a PPP loan application to Bank of America for $355,000 for entity Beagle Real Estate Investments.  In support of that PPP loan application, defendant listed that the average monthly payroll was $120,000, and that the number of employees was 43.  Defendant knew that those statements were false.  Further, in support of that loan application, defendant also submitted a 2019 Form 940 (Employer's Annual Federal Unemployment (FUTA) Tax Return) for Beagle Real Estate Investments, dated February 24, 2020, which reported payments of $1,704,000 to employees for 2019, and a 2020 Form 941 (Employer's

3

QUARTERLY Federal Tax Return) for the first quarter of 2020 (Q1), dated April 1, 2020, which reported $308,000 in wages paid to 13 employees for that quarter. Defendant knew that those tax documents were fabricated and contained false information. That fraudulent loan application was approved, and on or about May 4, 2020, Bank of America disbursed $355,000 of PPP loan proceeds to the bank account provided by defendant in the loan application.

- Defendant also submitted at least one other PPP loan application in 2020, which he knew also contained similar false statements and/or attached similar fabricated tax documents. One such loan application was approved, and Bank of America disbursed $300,000 as a result. The authorization, transportation, transmission, transfer, disbursement, or payment for the PPP loans submitted by defendant in April and May 2020 was in or affected interstate or foreign commerce.

- When interviewed by agents in October 2020, defendant admitted that he had submitted the multiple PPP loans knowing that they contained false information about employees and payroll, including the fabricated tax documents.

- The parties agree that for purposes of this Plea Agreement, the intended loss from the PPP loan applications that defendant submitted is greater than $550,000 and less than $1,500,000, and the actual loss from the two loans that were approved and disbursed is $655,000.

(DE 24 at 11-12.)

The PSR noted that entity Beagle Real Estate Investments, LLC, was formed on August 26, 2015, and defendant is listed as the only member. (DE 36 (PSR) ¶ 12.) Antelope Valley Residential

4

Development, LLC, was formed on December 5, 2016, and Raymond Magana is listed as a Chief Executive Officer, and Goldstein is listed as a Manager. (Id. ¶ 13.) Magana is the CEO of The Building Circle, LLC and Forward Builders, LLC. (Id. ¶ 14.)[1]

### III. THE PSR'S CALCULATIONS AND RECOMMENDATION

The PSR calculates defendant's Guidelines sentencing range as 33 to 41 months of imprisonment, based upon a total offense level of 20 and criminal history category of VI. (Id. at 3.) The Probation Officer recommends a below Guidelines sentence of 24 months of imprisonment, to be followed by three years of supervised release, and restitution of $655,000. (DE 35 at 1-2.)

The PSR found that the intended loss was $1,230,000. (DE 36 ¶ 40.) The PSR's guidelines calculations are summarized as follows (PSR paragraph identified in parentheses):

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) (¶ 37) |
| $550k < Loss < $1.5mm: | +14 | U.S.S.G. § 2B1.1(b)(1)(F) (¶ 40) |
| Section 1040 conduct: | +2 | U.S.S.G. § 2B1.1(b)(12) (¶ 41) |
| Acceptance of Responsibility | -3 | U.S.S.G. § 3E1.1 (¶¶ 47-48) |
| **Total Offense Level:** | **20** | |
| Criminal History Cat.: | I | |
| Guidelines Range: | 31 to 41 months | |

These are the same calculations agreed to by the parties in the plea agreement, so the government agrees with them.

### IV. GOVERNMENT'S POSITION REGARDING SENTENCING

#### A. Summary of the Government's Position

Defendant committed the serious federal crime of fraud involving

---

[1] The government held defendant responsible for the loans he filed, and held Magana responsible for the loans he filed.

5

COVID-related PPP benefits, where defendant made false statements and submitted fabricated tax documents to receive hundreds of thousands of dollars of PPP funds that were intended to assist employees who had been adversely affected by the COVID pandemic.  Simply put, he stole taxpayer funds intended to help those who had been hurt by the COVID pandemic.  The government does not object to the Guidelines calculations of the Probation Office.  As to the appropriate sentence, the government believes that a low-end Guidelines sentence – after applying a COVID-based two-level variance and the reasons in the concurrently-filed under seal document – is appropriate in this case.

As discussed below, the government recommends a sentence slightly below the 24 months recommended by Probation: <u>21 months' imprisonment</u>, followed by 3 years of supervised release, and restitution of $655,000 payable to Bank of America.[2]

**B.   The § 3553(a) Factors Call for a Guidelines Sentence.**

Under 18 U.S.C. § 3553(a), the Court should impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" of sentencing as set forth in § 3553(a)(2).  The Court is to consider various factors in determining the particular sentence, including:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [¶] (2) the need for the sentence imposed -- [¶] (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; [¶] (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant; . . . [¶] (4) the kinds of sentence and the sentencing range established [in the Sentencing Guidelines]; . . . [¶]

---

[2] SBA is an inchoate victim, because SBA guaranteed PPP loans, so if banks suffer a loss and make a claim with SBA, SBA may have to pay.

6

> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and [¶] (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Here, application of those factors supports the conclusion that the recommended below-Guidelines sentence is a reasonable and appropriate sentence for defendant.

### 1. Nature, Circumstances, and Seriousness of the Offense

Defendant committed a serious federal crime, involving intended loss of more than $1,200,000 of taxpayer funds (and more than $650,000 of actual loss), which he perpetrated not only with false statements, but also by fabricating tax documents.

### 2. Defendant's History and Characteristics

On balance, defendant's history and characteristics lack significant mitigation in this case. Defendant lacks a criminal history, which is adequately taken into consideration by the Guidelines.

### 3. Adequate Deterrence to Defendant and the Public

Based upon his lack of criminal history and proffered remorse, the government does not believe that specific deterrence is a big issue in this case.

On the other hand, general deterrence is. The need for public deterrence supports the recommended sentence. Given the prevalence of COVID-related fraud against the government – billions of dollars in PPP-related fraud during the past year, general deterrence would be served by a sizable prison sentence in this case, so that people stop committing these crimes.

The COVID-19 pandemic is not over. The PPP loan program is soon addressing an important next step—loan forgiveness. In order for PPP

loans to be forgiven, businesses will need to certify that they used the funds for their intended purpose —for payroll, rent, and utilities.  News of PPP loan fraud will likely reach others who may apply for these loans in the future or may have to certify their own PPP loan for forgiveness.  As such, the sentence that the Court orders in this case may serve as a warning to others to not commit a similar crime.

In short, people who commit COVID-related benefits fraud against the government need to know that they will be held accountable - and will be imprisoned for years in federal prison.

### 4. **Need to Protect the Public from Defendant**

The government agrees with Probation that several years of supervised release is appropriate in this case.  Even though defendant lacks a criminal history, in a short span of time last year, he was able to inflict more than half a million dollars of injury to federally insured funds.

### 5. **Need to Avoid Unwarranted Sentence Disparities**

The recommended below-Guidelines sentence of 21 months of imprisonment does not appear to be disparate to a sentence for a fraud conviction involving a loss exceeding half a million dollars, in particular COVID-related fraud.[3]

Based upon the above, a Guidelines sentence adequately addresses

---

[3] Recent sentences for PPP fraud from other districts range from 12 months to 51 months of imprisonment. E.g., United States v. Tarik Jaafar, 1:20-cr-00185-CMH (E.D. Va.) (November 2020 - 12 months sentence/$1.4mm actual loss/criminal history category I); United States v. Nadine Jackson, 3:20-cr-00112-MJN (S.D. Ohio) (March 2021 – 24 months sentence/$2.3mm actual loss); United States v. Tubbs, 4:20-cr-00193-BSM (E.D.Ark.) (March 2021 - 41 months sentence/$1.9mm loss); United States v. Joseph M. Cherry, II, 4:20-cr-00027-RBS-LRL (E.D. Va.)  (May 2021 - 51 months sentence/loss>$150,000/criminal history category V).

the Section 3553(a) factors.

### C. Restitution

In the plea agreement, defendant agreed to make full restitution. The PSR correctly calculates restitution as $655,000. Defendant should be commended for taking efforts and making a pre-sentence payment of $300,000 towards restitution, and his continuing laudable efforts to pay more by the time of sentencing.[4]

## V. CONCLUSION

During the past year, tens of billions of dollars in PPP loans are suspected to have involved fraud. *E.g.*, "$84 Billion in PPP Loans Are Potentially Fraudulent, But Only 1% of Funds Have Been Seized," Newsweek (March 24, 2021).[5] Similarly, during the COVID pandemic over the past year, criminals have robbed the state of California of billions to fraudulently obtain COVID-related unemployment benefits from California EDD. *E.g.*, "California officials say unemployment fraud now totals more than $11 billion," Los Angeles Times (Jan. 25, 2021);[6] "1.4 million unemployment fraud cases could take a month to fix, EDD says," Orange County Register (Jan. 12, 2021).[7]

Defendant was part of that COVID fraud scourge. Defendant filed multiple PPP loan applications that had false statements, when

---

[4] The government's understanding is that defendant is finalizing other financial transactions to be able to pay even more in restitution before the time of sentencing.

[5] Available at https://www.newsweek.com/84-billion-ppp-loans-are-potentially-fraudulent-only-1-funds-have-been-seized-1578708 (last visited 04/12/2021).

[6] Available at https://www.latimes.com/california/story/2021-01-25/california-unemployment-fraud-11-billion-investigations (last visited 03/29/2021.)

[7] *Available at* https://www.ocregister.com/2021/01/12/1-4-million-unemployment-fraud-one-month-fix-edd-jobs-layoff-economy/ (last visited 03/29/2021).

9

attempting to obtain more than one million dollars.  He went even further and fabricated tax documents to support his false statements.  By his fraud, defendant was able to steal $655,000 in PPP funds to which he was not entitled.

General deterrence is an important consideration in this case.  A sizable sentence will send a strong message that such COVID relief fraud will be swiftly and appropriately punished and that those engaging in it can and will be held accountable.

On the other hand, defendant did immediately admit culpability (confessing when first contacted by federal law enforcement), and pleaded guilty immediately thereafter.  That, however, is largely addressed by the two-level downward COVID variance recommended by the government.

Defendant should also be acknowledged for his attempts to fix his mistake, by not only accepting responsibility, but also by paying hundreds of thousands of dollars back in restitution.  And it does appear that defendant did not engage in this fraud with the intent to squander the funds on personal or lavish expenditures, but rather, he intended to use the funds for real estate investment or rehab.

Moreover, for the reasons given in the concurrently filed under seal document, the government believes that the recommended sentence is fair and reasonable.

For the foregoing reasons, the government respectfully requests that this Court impose the following sentence:

1.   21 months of imprisonment;
2.   3 years of supervised release;
3.   $655,000 restitution; and
4.   $100 special assessment.